May I begin, Your Honor? Yes, go ahead, Mr. Isaac. Good morning, Your Honors. My name is Brian Isaac. I represent, as you know, the plaintiff's appellant. Seated to my left is Scott Epstein. Mr. Epstein is the attorney-at-law for the plaintiff. And he's here to assist me in the argument. As I see the issues here, there are two main issues and one kind of sub-issue dealing with Scott. Issue one relates to the nature of the clause that is either a forum selection clause or a choice of law clause. And the second issue is whether or not the district court correctly dismissed this FSIA claim on the ground that there was no commercial activity exception that was applicable or pled as a matter of law. With your permission, I want to discuss the forum selection clause first, and then I'll deal with the commercial activity exception second. And I'll try to fold in the discovery issue, and I'll try to save you my time. The clause at issue is on page 81 of the record, and it says this. The parties will submit themselves to the jurisdiction of the laws of the United Kingdom for any and all disputes arising from this agreement. We have competing export affidavits. We even have the district court in, I think, footnote seven saying that this contract doesn't make sense and what the district court did. You have to help me with that because as I read it, it makes perfect sense. It says this matter goes to the U.K. for litigation. So, Judge, let me tell you why it doesn't, and here are the reasons if I can. First, the plaintiff said in his declaration that the reason that he— about this is not supported by the text of the provision you just read. Sure, because the term—because the specific term jurisdiction of the laws of the United Kingdom is not something that makes textual sense, makes syntactic sense, or makes linguistic sense. It makes perfect sense. You litigated England under English law? Yes, but you can have a litigation. For example, it would make perfect sense for Saudi Arabia to say I don't want to litigate a case in the United States under United States law because it's foreign, but they want a neutral law, so they use British law. The fact of the matter is that— So your position is that these commercially sophisticated parties said, well, look, let's select U.K. law, but let's litigate it in New York. You have to look at it from two sides. Is that what you think they had in mind? Yes, I do, and I can tell you why. I'm New York judge. I've never seen anything like that. I would know—I would be extremely uncomfortable in trying to adequately or fairly or efficiently apply U.K. law. And it would seem to me—I mean, I would scratch my head as to why litigants would want something like that. Well, again— They could have easily said it. So let me try to convince you otherwise because that's my— Help me. Help me. No, no, please. If you have a problem, I want to hear it because I'm trying to win the case. I don't need to be stroked at all. I'm still trying to win. So let me tell you how this goes. First, plaintiff's testimony, and I'll get to the clauses themselves and why I think that there's a commercially reasonable basis for it. Plaintiff said, I have two choices to enter into this contract. The plaintiff is a small corporation in New York, domiciled in New York. I pick Sharia law or I pick Great Britain law. He wants the contract. It's a $60 million claim. He picks Great Britain's law. Great Britain's law is a derivative of American law. Secondly, you have to look at it from the perspective of the plaintiff as well. There are two parties here. Why would a southern district corporation, small corporation, want to litigate a case against a foreign sovereign who has much more resources than the corporation does in a foreign land? It doesn't make any sense. Why? That's a big question. Law could be more favorable. Excuse me? Law could be more favorable. Could be. Clients could want it. It could be less favorable also. But it wouldn't make sense for a normal corporate executive to want to litigate a case that can be litigated theoretically in New York in a foreign country. It's much more expensive. It doesn't have the same resources. And it wouldn't be something that I think— It could be that they wanted, obviously, to have the jurisdiction and the laws litigated in the U.K. And he wanted the $60 million. So he agreed to it. Right? It could make business sense overall simply because he wanted—they wanted to obviously have it in the same forum as the law that was being applied, and he wanted the $60 million. Judge Bianco, I don't disagree with that. I'm not asking for summary judgment. What I'm saying is that when you have a— Why isn't the jurisdiction phrase under your reading become superfluous? If they wanted to just apply the laws, they don't have to put the word jurisdiction in there. They could just say the laws of the United Kingdom. Right? You're basically saying ignore the word jurisdiction, aren't you? I'm not saying ignore the word jurisdiction at all. What our experts said—and our expert came up with syntactic language that went against that. The expert said that normally when dealing with British law, you use the term courts when you're using a forum selection clause, courts or tribunal. That's not in here. And secondly, the word jurisdiction can also be used to have authority. In other words, this was a situation where jurisdiction is an improperly used word, which would not be necessarily out of line with the overall text of this contract, which, again, as I said before, even the district court tried to rewrite in a way that was sensible. So I'm not suggesting to you that this is a slam dunk case. So if it's ambiguous, what happens? You have to have at the very least jurisdictional discovery. You should not lose on a 12B motion where we have no discovery whatsoever. And an evidentiary hearing with the experts? Is that what you're suggesting? You could have an evidentiary hearing, but I would suggest that the proper remedy, if you find that this is ambiguous and you agree with the position that we've espoused in our brief, is to have limited jurisdictional discovery on what was said, how it was said, and then have a hearing on it. But it seems to me that where you have an entity that drafts this very agreement, and we have contra preferentum rules of construction, whether it's in Great Britain or the United States of America, the plaintiff shouldn't lose on a 12B motion without any discovery. It's just not something that can be decided summarily. It's not that clear. Now, maybe they win on a hearing. Maybe they win on Rule 56. But I don't think they should win on this kind of motion in the procedural context. So you're also suing Great Britain? Yes, we did. Same claims? Same claims. I can tell you why. It's not complicated. I know you know what it is. So if there is a jurisdictional defense that's being proffered by any defendant, it doesn't matter if we're talking about a foreign sovereign. We're dealing with a product liability case where we're suing an out-of-state defendant who asserts a minimum contact penalty. When you went into British court, did you allege that the court had jurisdiction? I'm sure we did. But that was a prophylactic measure that is done very, very often by good lawyers and even lawyers who aren't good to avoid a statute of limitations claim or a malpractice claim because you're supposed to sue an entity in the jurisdiction where they're amenable to sue. So you alleged, after a reasonable inquiry and so forth, you alleged jurisdiction both here and in the U.K. Yes, but the U.K. case, as you know, was not a case that was actively being litigated. It recently got dismissed. You have the letter of transmittal. But it was dismissed not on substantive grounds. It was dismissed on statute of limitations grounds based on a differentiation as to when the statute of limitations actually accrued. Did the U.K. court have jurisdiction? I'm sorry? Did the court in the U.K. have jurisdiction? Well, I think that the argument would be the U.K. court had jurisdiction, but this court had jurisdiction as well, and the bringing of the suit in the U.K. court was a prophylactic measure, which it clearly was, designed to ensure that the plaintiff at least got one shot at the apple to litigate the case somewhere substantively without having a substantive non-merit dismissal of the case. That would be the argument. I don't want to run over my time. Is it okay if I go into the commercial exception, or do you want me to? Three minutes on rebuttal. I'll give you just one minute just to give a high level about it, and then you can handle it in rebuttal. Yes, I will. That's fine, Your Honor. And what I'll do is I'll truncate my argument. I'm relying effectively on the commercial activity exception on your ever-ready Finlay Consulting LLC case against Republic of Suriname. It is a very, very similar case involving a contract that was designed to develop a strategic branding campaign for Suriname. And rather than go over, Your Honor, I'll discuss that in my reply if I can, because I'll deal directly with the case. Thank you. Thank you. Thank you. Okay, Ms. Chokin. Good morning. Good morning. May it please the court. There's quite a lot to respond to, but I'll begin with answering a question that Judge Cabranes posed in early February in the energy case. What are you talking about? This is a case called Energy v. Angola from this court, and it considered a form selection clause. I'm sorry. It considered similar challenges as here. Some of the contracts did have form selection clauses. But primarily, the court was concerned with whether the form selection clause analysis and the primacy of the form selection clause applied equally in an FSIA case. In that instance, the difference was that the party that was supposed to be in Angola had sued in the United States but had no connection whatsoever to the United States, whereas plaintiffs here claim their connection with the state of New York. What Judge Cabranes asked the parties was, if you wanted to be in Angola so much, why didn't you put it in the contract? In this case, that is precisely what the parties did. There is language that we're hearing both on brief and in court about a lack of sophistication on the part of the plaintiffs, subjective views of what the plaintiff, individual plaintiffs, thought that he was entering into. The reality, though, is that this was allegedly a contract for more than $57 million, and it wasn't a contract of adhesion. The parties went in having decided both a form selection clause and a choice of law clause. Wouldn't you agree that if you're really trying to do both, the better phrasing of this would have been to the jurisdiction of the laws – to the jurisdiction and the laws of the United Kingdom? Wouldn't that be clearer than just saying the jurisdiction of the laws? No, Your Honor. No? And, in fact, that language is really irrelevant in a way to our conversation here today because – Well, the argument is that jurisdiction can mean two things. It can mean form and it can mean the authority of, right? Isn't – That's incorrect. Under English law, unfortunately, we cannot take the plaintiffs' views on what the word jurisdiction meant because their expert never addressed it. Out of a 25-word clause, which we say addresses both form selection and choice of law, their expert never engaged with 19 of the words in the clause. Now, in England, just as in the U.S., we follow the word – I'm sorry. I'm sure this is just me, but I'm having a lot of trouble following your argument. I'm sorry. So is it your position that this clause is – can be read on its face or is ambiguous and we have to resort to extrinsic sources like expert testimony to understand? What's your position on how this clause is to be read? Thank you, Judge Parker. I appreciate the guidance. This is a very simple contract case. There is no ambiguity. This is a clear contract provision. What does this clause say? The clause says that the parties will submit to the jurisdiction for any and all disputes to the jurisdiction of the laws of the United Kingdom. And what the district court observed, relying on expert testimony from both parties, was that there were two errors, potentially, scrivener's errors in the clause. That while it wasn't the greatest wording of a clause, it didn't rise to the level of an ambiguity or an error of law. And there's a clear – Can I just say, it's your view then, though, that the fact that we do have competing experts testifying as to what this means, doesn't that weigh in favor of the idea that actually there is some ambiguity here? No, Your Honor. There's no competing expert. That's a characterization that the plaintiffs have put forward. But upon review, Judge Hellerstein below, and a moment ago I mentioned that the plaintiff's expert hadn't dealt with the vast majority of the terms in the clause itself, meant that the plaintiff's expert had never given an opinion on what the terms, the language in the term relating to jurisdiction actually meant. There's really only one opinion in the record right now about what the term jurisdiction and any and all disputes means. I have another opinion. It wasn't cited in the briefs, but there's a high court of England case called Celtic in 2004 that says, quote, when the contract talks of the issue of performance being subject to the jurisdiction of the laws of England, it means that the English law of construction will apply. So that's the high court of England suggesting that the word jurisdiction of the laws could, not necessarily, but could just be referring to English, the use of English law. In that case, the parties then added to that of whose courts the parties here to submit, which made it clear that they were not just applying English law. They were submitting to the courts of the U.K. We don't have that here. So my question is, why isn't it at a minimum ambiguous? It's not because, for one, just as in the U.S., there are no magic words that go into a forum selection clause and a choice of law clause. But we should just ignore what the high court of England says about what this means? No, Your Honor. Just in fact that there are cases more appropriately applied to this particular situation. You asked earlier, Judge Parker, is this a facial challenge? Yes, it is. And so the questions here are ones of law and whether plaintiffs have appropriately pled their case. What we understand in English law is not just a review of the plain language. But that English law, it requires that each word and part of the term be looked at through the lens of the commercial consequences rule, which is effectively business common sense. So every part of the term must be interacted with, including by plaintiff's expert, which he did not do. So that when you examine each word in the clause, what we're calling the term, you must look at it in the context of what are these parties contracting to? What is it that they're trying to accomplish? As a district court did, we're going to consider business common sense to try to interpret this clause. Why wouldn't that warrant discovery and or hearing so that parties could try to articulate what the business rationale would be for splitting the forum and the laws? In this particular case, I've posited what may have been going on here, but we don't know that for sure. So why isn't business common sense precisely something, if you're going to have to rely on that, that might necessitate discovery and or hearing? Because it's not a subjective view. It's an objective test that doesn't change. And what the English law says is that we have two parties, one located in Saudi Arabia, the other in New York. They have specifically chosen a neutral forums law, which is common in the English courts. And so the business common sense opinion is, why would two parties who have agreed to a neutral choice of law, and there's no dispute about that. Everybody agrees, English law applies, that why would you have a neutral choice of law but allow the plaintiff to go to his home jurisdiction? Under English law, that makes no business common sense. Who drafted this contract? I don't know specifically. My understanding is that there are allegations that the kingdom… You don't know who drafted it? No, sir. The allegations, though, by the plaintiff are that the kingdom and the CPA drafted it. I'm sorry, the what? That the kingdom and the Consumer Protection Association, the CPA, drafted it. So if there was ambiguity, one of the kinds of construction would be construed against your clients, right? I'm sorry, I didn't hear you. If it's ambiguous, one of the kinds of construction then would suggest based upon that allegation that it should be construed against your client, right? Because they drafted it. Respectfully, I would disagree because… You just – I just understood you to say that your client – that you don't know who drafted it, but you don't believe your client did. No, I'm sorry, sir. I don't know. But even if we assume that plaintiffs are correct, that the CPA and the kingdom drafted it, the only part about which the plaintiffs are claiming ambiguity is the word and or the. But we can, under English law, the court can, interpret this term without ever looking at that conjunction. Instead, the important part, according to English law, is to look at the term jurisdiction. That is not a choice of law word. It doesn't mean choice of law in English law. In addition, there's the phrase any and all disputes. With those two pieces of language, the opinion of our expert and then of Judge Hellerstein after his review of the record, was that there's no way that this is simply a choice of law clause. In addition, the expert for plaintiffs, Mr. Turner, agreed. He said the word jurisdiction means something distinct from choice of law. So the interpretation of this clause is controlled by English law? Is that correct? Yes, Your Honor, and that's by agreement of all parties. There's no dispute about that fact. In addition— Or is there a dispute on the record as to what the clause means? I mean, you have an expert and then Mr. Isaacs has one also, right? We would submit, Your Honor, that there is no opinion on the record as to what the jurisdictional language in the term means or implicates. In fact, there— None from anyone? From our expert, yes, for the defendants. You said none. From the plaintiffs. The plaintiffs' expert only addresses the choice of law language. He never gets to the jurisdictional language. I get it. Thank you. If I may correct one other point, I see I'm over my time, so I don't want to abuse the court's generosity. Go ahead. The plaintiffs said in their argument opening that this case is not an act of litigation in England. I'm sorry, but that's not correct. In fact, the plaintiffs have now filed a notice of appeal posing more than one question. Those documents are under seal, but we have been able to disclose to the court, including by a Rule 28J letter late last week, that in fact the plaintiffs have been given permission to appeal the decision on statute of limitations and that the plaintiffs are also pursuing permission to appeal a portion of the English court judgment that initially they were not allowed to appeal on. That case is going to be fully heard by early March. What legal point does that relate to in terms of what we have to decide? That doesn't tell us what the clause means. It doesn't relate to anything, right? They're saying they did that as a protective measure. They're not arguing that the courts of the U.K. don't have jurisdiction. They're just saying that it's not mandatory and that they filed that lawsuit as a protective measure. So I'm not sure how we should consider that. So in English law, Your Honor, the phrasing that is used in this particular term, and this is described in defendant's expert's opinion, is that – and may I just note that defendant's expert, Mr. Keeley, is a judge on the court where their case is pending. And his interpretation is that the language in the term is language of exclusivity. But as in the U.S., no magic words like courts are needed. But the reason to answer another question the court posed, why in the world would you want to be in New York under English law? The answer is quite simple. In England, if they lose, they have to pay all the costs to the opposing party, and they don't in New York. But that hasn't stopped plaintiffs. They have been litigating the exact same case against the same defendant on the same claims since the day after they filed this action in New York. All right. Thank you. Okay, Mr. Isaac, you have three minutes. Yes. Your Honor, if it's okay with you, I'm going to try to follow the flow of the court. If you have any questions on the commercial activity exception, you'll let me know. I do have some record cites for you. A statement was made that we don't know who drafted the contract. That's not true. It's on 153 of the record. The plaintiff absolutely says the contract was drafted by Saudi Arabia and with their lawyer. So that's the only evidence in the record. I also thought that I understood my adversary to say that their claim was not that the contract was ambiguous, that there was no ambiguity. With all due respect, that's not what their expert said. And if you look at page nine of the judge's decision, footnote four, he cites to the reply affirmation of Mr. Keeley. That's their expert, where he says, and I quote, 304 of the record, line three, the parties clearly meant to say. That's not Brian Isaac talking. That's not Scott Epstein talking. That's their expert saying the parties above will submit themselves to the jurisdiction and the laws of the United Kingdom for any and all disputes arising from this agreement. So what they're doing is they're taking out the of and they're putting in the and. There's no question that there is an ambiguity here. And my adversary also made a point, which I'd like to address as well. There's a really, really good reason, which, quite frankly, I should have realized, but she just brought up. If the losing party in England has to pay fees, then why would Mr. Picayune, who's a small business owner, why would he want to litigate that case there? He's moving out of his forum. He's going to a place where if he loses the case, he's going to get more fees from the United Kingdom's lawyers, who I'm sure are going to charge more fees than Ms. Epstein and I are. That's another reason to simply have a hearing on this. Just one more minute. I promise I won't go over. I would ask the court on the commercial activity exception again. Read the ever-ready Finley Consulting LLC case against Republic of Suriname. The site is 831F Appendix 599, Second Circuit, 2020. I believe it's directly on point. The only difference I can see with that case than this one is that in that case, the advertising services also took place in New York. And we'd ask you to read our- In that one, it was geared towards the U.S. market, though, right? It was. That's what I said. Yeah. But the language that you use is so directly on point. For example, quote, Suriname chose to deal with an American company and key contractual negotiations allegedly, here we know this, not allegedly, occurred in New York. Many aspects of the contract were performed in New York. Here, all the aspects of the contract were performed in New York. Suriname paid under the contract. Here, we don't have any payment to U.S. dollars in U.S. bank accounts and the contracted targeted U.S. travel. Outside of the targeted U.S. travel, we have everything the same here. All right. And I will not go over my time. Thank you, Your Honor. Thank you. Thank you both. Reserve decision. Have a good day.